Clayton L. Everett | State Bar No. 24065212
Norred Law, PLLC | 515 E. Border St. | Arlington, Texas 76010
Telephone: (817) 704-3984 | clayton@norredlaw.com
Counsel for Plaintiff

United States Bankruptcy Court
Northern District of Texas
Fort Worth Division

| | |
|---|---|
| In re: Jacob Alexander Witkowski,<br><br>Debtor. | Case No. 26-41738-7<br><br>Chapter 7 |
| JACOB ALEXANDER WITKOWSKI,<br><br>Plaintiff.<br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, AIDVANTAGE, and NAVIENT SOLUTIONS, LLC,<br><br>Defendants. | Adversary No. 26-04076-elm |

## AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF STUDENT LOAN DEBT UNDER 11 U.S.C. § 523(a)(8)

Plaintiff Jacob Alexander Witkowski ("Plaintiff" or "Debtor") brings this adversary proceeding to discharge his federal and private student loan obligations. Plaintiff seeks a determination that these liabilities are dischargeable because requiring repayment would impose an undue hardship pursuant to 11 U.S.C. § 523(a)(8).

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

2. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

3. Plaintiff is a debtor in a Chapter 7 case pending before this Court.

## II. PARTIES

4. Plaintiff is an individual debtor residing in Hurst, Texas.

5. Defendant, the Department of Education is an agency of the United States that holds or guarantees Plaintiff's federal student loans. The Department of Education can be served at U.S. Department of Education, Office of the General Counsel, 400 Maryland Ave SW, Washington, DC 20202. Service upon the United States Department of Education shall also be made by serving the United States Attorney for the Northern District of Texas and the Attorney General of the United States pursuant to Fed. R. Bankr. P. 7004(b)(4) and (5).

6. Defendant Aidvantage is the loan servicer for Plaintiff's federal student loans and may be served at its correspondence address: P.O. Box 300001, Greenville, TX 75403-3001.

7. Defendant Navient Solutions, LLC is the owner and holder of Plaintiff's private student loans which are serviced by MOHELA. Navient Solutions, LLC may be served at its legal department and corporate headquarters, located at 13865 Sunrise Valley Drive, Suite 110, Herndon, Virginia 20171-6188, and through its registered agent, CSC-Lawyers Incorporating Service, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

8. Defendant MOHELA is the loan servicer for Plaintiff's private student loans and may be served at its principal office and business address: 633 Spirit Drive, Chesterfield, MO 63005-1243.

## III. BACKGROUND FACTS

9. Plaintiff filed Chapter 7 bankruptcy on May 18, 2026, in the Northern District of Texas (Case No. 26-41738-7).

10. Plaintiff seeks the discharge of student loan debt totaling exactly $205,248.45. As documented by the National Student Loan Data System (NSLDS), this portfolio consists of

$169,994.99 in federal loans owned by the United States Department of Education and serviced by Aidvantage ($149,537.64 in outstanding principal and $20,457.35 in accrued interest), alongside $35,253.46 in private student loans owned and held by Navient and serviced by MOHELA.

11. Plaintiff's personal monthly income was $5,028.49 at the time of filing. Following a subsequent change in employment, Plaintiff's current income has adjusted to approximately $6,000.00 per month.

12. After accounting for necessary monthly living expenses of approximately $5,270.00, Plaintiff is left with insufficient disposable income. However, this nominal surplus will be entirely eliminated in the immediate future by an anticipated $800.00 monthly increase in healthcare and insurance premiums for his family.

13. Consequently, Plaintiff will be left with zero disposable income to service a $205,248.45 debt balance, and any requirement to repay these obligations would force him below a minimal standard of living.

14. Plaintiff's household consists of his wife and their four-year-old daughter. Plaintiff is the sole economic provider for the family. Plaintiff's wife is a non-U.S. citizen with limited English proficiency, a structural barrier that heavily restricts her employment prospects.

15. Plaintiff's federal loans serviced by Aidvantage are calculated under an income-driven repayment plan, which presently sets his minimum mandatory payment obligation at $0.00 based on historical earnings.

16. Despite this temporary $0.00 threshold, the underlying debt structure, continuous interest accrual, and systemic long-term liabilities prevent Plaintiff from ever fully servicing the debt without dropping below a minimal standard of living.

17. These federal loans are currently in administrative forbearance.

18. Plaintiff's private student loans serviced by MOHELA consist of six "Signature Student" private loans disbursed between 2008 and 2011 during his undergraduate studies. These private loans do not qualify for federal income-driven repayment structures or administrative relief programs. Consequently, Plaintiff has been forced to make active, out-of-pocket payments on these private obligations despite severe financial strain.

19. In the Spring 2019 semester, Plaintiff's student loans left a tuition deficit of $6,135.00, forcing him to borrow money from his father to remain enrolled.

20. Conversely, during both the Fall 2019 and Spring 2020 semesters, federal student loans serviced by Aidvantage were over-originated beyond Plaintiff's actual institutional costs, resulting in substantial cash surpluses disbursed directly to Plaintiff:

- Fall 2019: A total of $25,876.00 was disbursed ($10,142.00 in Direct Unsubsidized and $15,734.00 in Grad PLUS loans) against $13,670.00 in actual tuition, fees, and insurance, resulting in an excess disbursement of $12,206.00.
- Spring 2020: A total of $25,876.00 was disbursed against $16,916.00 in actual charges, resulting in an excess disbursement of $8,960.00.

21. These over-originated funds, totaling $21,166.00 across both terms, were issued as non-tuition cash refunds and subsequently used for daily family living expenses and a $3,000.00 loan repayment to his father.

## IV. EDUCATIONAL AND EMPLOYMENT HISTORY

22. Plaintiff attended Rutgers University from 2007 to 2011, where he completed a Bachelor of Arts, graduating magna cum laude with majors in History and Russian Language

and a minor in Economics. The private student loans serviced by MOHELA were originated exclusively for this undergraduate period and bear no relation to his subsequent education.

23. Plaintiff subsequently attended Columbia University from 2018 to 2020, where he completed a Master of Arts in East Asian Languages.

24. Plaintiff is currently employed full-time in a remote Project Producer position. Because this position is exempt under the Fair Labor Standards Act, Plaintiff receives a fixed salary and cannot generate supplemental overtime income.

25. Furthermore, this employment is strictly temporary and subject to an initial evaluation period of three (3) to six (6) months, after which continued employment or conversion to a permanent position is not guaranteed.

## V. UNDUE HARDSHIP ANALYSIS

### A. Inability to Maintain a Minimal Standard of Living

26. Plaintiff has minimal income and no assets of value. Plaintiff receives no government assistance and does not receive, and is not otherwise entitled to, financial support from any source.

27. While Plaintiff's current temporary employment yields a nominal monthly income surplus over his baseline expenses, this buffer is highly volatile and transient. Plaintiff lacks health insurance coverage through his temporary position; upon procuring independent or employer-sponsored coverage in the immediate future, his necessary monthly expenses will escalate by an estimated $800.00, entirely evaporating any temporary disposable income.

28. In reality, Plaintiff's nominal financial surplus is an artificial byproduct of severe household deprivation, as he has been forced to completely forego critical, non-discretionary health and developmental necessities to maintain baseline solvency.

B. Persistent Circumstances

29. Plaintiff's financial hardship is a persistent, structural condition. As verified by federal records, Plaintiff's structural dependency on student loan debt spans nearly nineteen (19) years, originating with his initial undergraduate loan disbursements on August 20, 2007. Since earning his Master of Arts from Columbia University in 2020, Plaintiff has experienced underemployment and income volatility, relying heavily on low-margin freelance transcription and translation work to supplement his income.

30. Plaintiff's current employment as a remote Project Producer represents his maximum earning capacity. Although he is reasonably expected to be retained past his initial evaluation period, transitioning to permanent status will not provide a financial cushion. Instead, it will immediately trigger an escalation in necessary living expenses.

31. Upon reaching permanent status, Plaintiff must enroll himself, his wife, and his daughter in a commercial health and dental insurance plan, which are vital components of a minimal standard of living currently missing from his budget. These mandatory out-of-pocket costs, along with standard retirement contributions, will add an immediate $800.00 per month in necessary expenditures.

32. Given Plaintiff's astronomical total student loan debt of $205,248.45, the upcoming addition of family healthcare premiums will completely absorb his nominal income surplus. Because Plaintiff's salary is strictly exempt and capped, and his career history demonstrates structural instability, there is no practical probability that he can service this debt over the remaining life of the loans.

C. Good Faith Effort to Repay

33. Plaintiff has made extensive, good-faith efforts to repay his student loans over a period of four years. He has paid a total of approximately $31,930.82 toward his original loan balance of $177,914.00, which includes active out-of-pocket payments to private servicers.

34. Despite making these substantial payments, the loans have been transferred multiple times between commercial servicers, and aggressive fees alongside accrued interest have caused the total balance to increase to $205,248.45.

35. Plaintiff's inability to continue servicing these loans is not due to a lack of effort, neglect, or refusal, but is the direct result of overwhelming financial hardship and systemic circumstances beyond his control that make continued repayment impracticable.

**VI. CAUSE OF ACTION**

**DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(8)**

36. Plaintiff reasserts and incorporates the preceding paragraphs.

37. Requiring Plaintiff to repay his federal and private student loans would impose an undue hardship on him and would entirely defeat the "fresh start" purpose of the Bankruptcy Code.

38. The student loan debts owed to Defendants should be declared dischargeable under § 523(a)(8).

WHEREFORE, Plaintiff Jacob Alexander Witkowski respectfully requests that this Court:

A. Enter a judgment declaring that the student loans owed to Defendants are dischargeable under 11 U.S.C. § 523(a)(8);

B. Grant such other relief as this Court deems just and proper.

Respectfully submitted:

By: __/s/ Clayton L. Everett____
Clayton L. Everett
State Bar No. 24065212
clayton@norredlaw.com
NORRED LAW, PLLC
515 E. Border St.
Arlington, Texas 76010
Telephone: (817) 704-3984
Counsel for Plaintiff